Thank you, Your Honors. I'd like to start out, as we must, with the issuance of the warrant. The warrant, as I know that you're familiar with the papers, it assumed that my client's products were illegal. And the magistrate was told that, and the magistrate was told that based on a conflation of the two statutes, or the two sections of the gun control act, there was never any criminal indictment filed regarding any of these items. There was never any legal action taken by the government beyond the service of the search warrant and the seizure of the property. Let me be sure I understand something correctly. The government's initial action was against the company in Bakersfield, right? Wasn't that the original criminal investigation, the manufacturer of the part we're talking about? We were not privy to that. I understand. You are privy to it now. You understand that's what it came from, right? They got information about your client because of the sales records of this other company. Correct. They, if I understand it correctly then, they contacted, like Kurgan said, you've got X number of these pieces, and they are illegal. We need them. Originally, counsel said, okay. And then they changed counsel. You're the new counsel. You said, no way. That's not right. Actually, your honors, this is, it was Alan Beck. I'm the third counsel. Oh, you're third counsel. Okay. I'm sorry. So anyway, some lawyer said, okay, but then a second lawyer said no, and that's when the litigation began. Is that correct? Correct. But this, this is not a civil forfeiture matter. This is in connection with a criminal investigation, right? Correct. That was how it was presented to the magistrate. However, there was never any indictment sought or obtained against anyone. Does there have to be an indictment before you can seize something as part of a criminal investigation, so long as it's returned if the indictment is dismissed or never brought? Well, the issuance of a search warrant does not require an existing indictment. So that's, that's, my understanding is that there was an issuance of a search warrant. It was represented to the magistrate that there was an ongoing criminal investigation, and that based on these facts and this construction of the law, the Gun Control Act, that the law had been And so that was what was represented. Now, as we've, after we obtained the search warrant, we were able to examine it, and we found out that the construction of the law is, is not a fair construction. It used, took pieces of the statute and mixed them together. Your They sent a letter to Paul Ryan and said that they're not going to be able to enforce the case in California from last year, based on this, they've adopted our position, essentially. So the underlying premise that they brought these cases was wrong. And so since, fine, that's where we are. I don't know if I answered your question, Your Honor. Well, I, again, what, what my question was is that the, the search warrant itself that sees these lower receivers was based upon a criminal investigation. Yes. The answer is yes. So they got them. They then determined, perhaps with your help, that they had mistaken their analysis, that this couldn't, it was not a criminal offense, therefore they returned to you what they had. I know there's a dispute about what they had, what they didn't have. That's an issue we can talk about. But the reality is they returned that. So your complaint at this point is what, that they were wrong in the first place? They were wrong in the first place that they had a requirement after they sent the notice. They had a choice at the outset. They had three choices. They could have sought to extend the time to bring a forfeiture action by going to the district court. They could have sought their indictment. Or they could have went ahead as soon as they received the claim. They could have brought, they had to bring the forfeiture action or just simply remove it after the 90 days passage. And actually, Your Honors, there's a new case that another panel's come out with, and that's Cindy O'Meady. And I've discussed this with Mr. Butcher. Did you send a 28-J letter to us? And to them? And to them. So they'd know what you're talking about? No, I just sent, emailed Mr. Butcher the... What's the name of the case and the site, please? Okay, it's Cindy O'Meady. How do you spell O'Meady? O-M-I-D-I. Uh-huh. And semicolon asset management irrevocable trusts via trustee Asia Trust Nevis versus United States of America. It's the Ninth Circuit case number is 15-55667. It was filed on March 13th. What does it say? It says that after the 90 days, they have to bring, I mean, they shall bring the forfeiture action. In that case, the holding was... Oh, you've got to get to CAFRA to get to that case? That's correct, but after the notice... And we didn't have CAFRA in this case, did we? We did, Your Honor, and this is why. Just a minute, just a minute. They brought something in CAFRA, but they dismissed it. It didn't start in CAFRA. It started under criminal procedure for a search warrant. May I explain? Well, I'm just trying to make sure we're agreeing or we're not. I don't agree, and I'll tell you why. Then why didn't it start that way? Okay, because when they seized the property, that's when they issued the warrant. The judge had jurisdiction over whatever was going to seize, that was seized under that. After that, the agency made a decision that they were going to seek forfeiture, and they issued the letter, the Notice of Administrative Forfeiture, and this is walked through in the omitted... Then they dismissed it, right? They dismissed it after they received the Lykergan claim. The Lykergan claim, the filing of the Lykergan claim triggered the obligation. At that point, it's our position that they could not. They had invoked CAFRA. We had accepted that challenge and said, fine, bring your action. We want to have the action. At that point, they could not undo their decision to invoke forfeiture. Let me step back a little bit. You've read pretty well, I hope, your complaint. In your complaint, do you seek anything except an injunction, equitable relief? No. So you seek equitable relief. They don't have the receivers anymore. You know they don't have the receivers anymore. You know there's nothing they can give you of the receivers. Why is the case not moot? Well, for one thing, the issue of that they don't have the receivers, that was not a legitimate declaration. Well, just a minute. It seems to me from reading your papers that you seem to agree they don't have the property. Well, whether they have it in the same safe that it came out of is they may not have that. It seems to me in your papers you are suggesting, and I could go to the brief for the very things you say, you seem to suggest the government does not possess the property, so now you want damage. But you didn't seek that in your complaint. Well, the restitution, and this is an important point, and that's the Republic Bank case said that the returning the property or its monetary equivalent is not damages, and that's not, does not require a waiver of sovereign immunity. So that's, we're not seeking damages, but we are seeking the return or its equivalent. So how do you distinguish Ordonez or D-O-N-E-Z? Ordonez is very much, it says an award of monetary damages against the government under 41G is barred by sovereign immunity. We weren't moving under 41G. What we were moving under is the So unless I can get it over to CAFRA, you lose. We believe that CAFRA was Just a minute. Unless I can get it over under CAFRA, you lose. Do you agree with that? Yes. Okay. My worry is your case is moot in the first place, because I look at your complaint, you've got everything you wanted under the complaint, and so it's over.  You can file another complaint if you want. Your Honor, what our Amend. We did amend, and then You didn't amend, the original complaint is still the same. We filed an amended complaint after we were allowed to Seeking the return of the 18 additional lower receivers. That's right. That's all you wanted. Are you seeking damages or restitution or whatever in Ares I for the loss or destruction of the 18 receivers that weren't returned in this case? We're not. You're not? In the 548 case, I don't believe that that's part of it. Okay. Could you make it part of it in a Bivens case? I don't believe so. I believe that there's a sovereign immunity associated with that, and that's something that has to be filed in another action in the claims court. But a Bivens claim is against individual federal officers, and individual federal officers don't have sovereign immunity. That's correct, but the individual federal officers that were named for the action are the ones that vandalized the store, the ones that made the false statements, and the ones that suggested that this was a firearm. So back to the CAFRA issue, once the court has jurisdiction over the race that it seized, I believe it is the Republic Bank case that says that there can be a return of the property or its monetary equivalent, even if the property is not still in its possession. You do agree, do you not, that CAFRA only applies in a civil forfeiture context? I agree with that. So this was a criminal action? It was not a criminal forfeiture. It wasn't a criminal forfeiture, Your Honor, because criminal forfeiture is what happens after there's been a conviction. Okay. The civil, and where CAFRA, once the CAFRA, the CAFRA bus left the depot when the Lycurgan filed its claim in response to that claim form. At that point, that triggered the CAFRA action, even though it hadn't, the government hadn't filed it, it was still obligated. Once you made your claim, the scene cannot change, no matter what they do thereafter, they're stuck in CAFRA. I believe so. That's our position. And what's your case that supports that position? It's the plain language, and then also the OMIDI reiterates that. OMIDI says that they shall file the, they shall file, and we believe it. I haven't seen this case that you're talking about. I'm sorry about that. You're saying that that case says that once, like in this case, you have filed an action, that the government can't change its position. Once you've filed a response to the government's forfeiture, they cannot pull out of the forfeiture. That's what you're saying. That's our position. Now, I want to put a caveat on that, is that the language in OMIDI may be dicta, because the holding was that actions involving more than $500,000 are not subject to it. In OMIDI, the action involved property over $500,000, but the language was that they shall proceed. So, Your Honors, this, the issue that I really see, the overarching issue, is what occurred here with Likergan. It was a process as punishment itself. At some point under Franks v. Delaware, Likergan or anybody that was prosecuted, again, over these crimes, was going to have an opportunity to see that warrant. They had a Fourth Amendment right to have a warrant issued only on the basis of probable cause. That was going to be subject to challenge. The identities, the person that swore out the warrant, was going to be subject to examination. Are you on the earlier case now? Are you back to the earlier case about the redacted names? No, no. I'm just repeating what my theme was here, is that this, they would have had their, Likergan would have had its opportunity to get its property back. It would have had an opportunity for a full hearing on this. Essentially, we've, it's never had. You could have had that opportunity if you just filed a Rule 41 motion. We actually did. Our Rule 41 motion wasn't in. Is that this complaint? Yeah, 41G, we had the complaint. Our amended complaint had a claim under 41G. We didn't have that opportunity to examine that or challenge that. In fact, on the CAFRA action, the 18 missing receivers, if you look carefully at the declaration, that wasn't, that declaration does not state affirmatively, doesn't have under penalty of perjury. It doesn't have the necessary personal knowledge. So we didn't have that opportunity to have a full hearing on that. It was just taken at face value. Okay, I have your point. Any other questions by my colleague? All right, thank you, counsel. We'll hear from the government. Good morning. Good morning, Your Honors. My name is Dan Butcher, and I represent the respondent in this case. I'll start off with the Rule 41G claim that the plaintiff made here. That was filed in an amended complaint after ATF had already returned all the lower receivers that it has in its possessions. At that point, there was nothing, no property to return under Rule 41G. That's why this case is moot. ATF has not taken the position that it has any legal right to retain any of the EP80s that were seized in the search warrant. And ATF has returned all in its possession. That was done as part of a open, transparent, and orderly return of property. Counsel, let me tell you something that has bothered me on this. The government gave, if you will, a receipt for what it took. And that had a certain number in it, and it returned a lesser number. Now, I think your position is that there was just an error in the calculation. But the reality is there's about $1,000 difference, if I understand the numbers correctly. Now, perhaps in the first action that's being sought, I don't know. But the government has to account for what it took. And when you give a receipt, I mean, if this were a tax case, the government would be in big trouble if it were on the other side because the receipt says what the receipt says. How are we to deal, if at all, in this action with the missing $1,000 worth of goods? It's actually $450, I believe. $450, okay. And what the district court did was the district court took a look at that and said, in light of all these circumstances, I'm not going to exercise my equitable jurisdiction over that case and the $18,000 missing because it's less than 1% of everything that was seized. The value is de minimis. Now, what happens when the government takes your stuff? If it's de minimis, it doesn't matter? No, I don't agree with that at all, Your Honor. And I take Your Honor's point. I would direct the court to pages 99 to 100 of the excerpts of record. There you have an inventory of everything that was counted at the time it was returned in the presence of Mr. McMillan and his client. And what we see from that inventory is that there were a total of 54 boxes that were seized. Eight of them had a discrepancy in the number that was recorded, written on the outside of the box at the time of the seizure, and a number was counted at the time of return. So this was a number that Leikurgen had put on the box, not what the government put on? Well, my understanding is that in some cases there were two numbers on the outside of the box, one perhaps by Leikurgen, but certainly there was a number at the time of the seizure that was put on the box by an ATF agent. But I guess my concern is, isn't the government responsible for its own actions here? Of course. But if it's a miscount. So the government miscounted. Yes. Isn't it still liable for its error? It may well be liable in damages, Your Honor. This is not a damages case. I understand that. I'm just trying to understand the – I guess this is being brought up in the first case, is that right, the one that's still pending? Is this issue there or not? Well, it's not squarely presented in the case, but I think they've taken a broader view of it, that the entire warrant was tainted by misstatements, misrepresentations, and therefore none of them should have been seized. So back to the inventory, what we have is the inventory reflects that there were eight boxes that had a different number of lower receivers in them than was reflected in the number on the outside. Not all of them were undercounts, so to speak. Two of the boxes, there were actually more in the box than was reflected in the number written on the outside. So when everything's netted, there is a net undercount of 18 at the time of the return. That reflects that there was simply a miscount. And I would submit to Your Honor, yes, the government is responsible for its mistakes, but if it's a miscount, there's no damages. And keep in mind, too. That's your position because you're the ones that counted them. But their position is, no, there were more there, you didn't return them. And since you counted them, aren't you responsible for that? And we're going to get to— Why don't the government just write them a check for $450 all the time you're spending? It's a whole lot more than that. Because they won't take it. Oh, they won't take it. They won't take it. Okay. Have you offered it to them? We have. Oh, that's interesting. And a Rule 68 offer of judgment? No. Isn't that your next move? Well, the case has been dismissed, and it's an equitable case. So we would have certain defenses to a damages suit under the Federal Tort Claims Act, for example, the seized goods exception. We've offered to—and there's another statute that I don't have the— it authorizes the Department of Justice to essentially pay a claim for lost damage without reference to the Federal Tort Claims Act. So we have the ability to do that, and there was a willingness back at the outset of the case to do it, but they weren't interested. So we are where we are with— So your representation of the court is that the government has, in fact, made such an offer and has been rejected by the Gleickergan? Yes. Okay. Was the offer made in the context of this particular case, Ares? I think this is Ares 3. Ares 3? If we're going to go in chronological order. Yes, Your Honor, and it was not a formal offer. It was a conversation I had with Mr. McMillan on the telephone. I said, you know, why should we spend a lot of time and money fighting over something like this? We'll take ownership of the counting error, and— We commend you for that. That's a common-sense thing to do. The government doesn't often do that, so good for you. Well, but the honest truth is that what we really have in this case is whether the district court, in making this same decision, abused its discretion in not exercising the opportunity to have equitable jurisdiction, right? Yes, Your Honor, and under all the circumstances, that clearly was well within the district court's discretion to do that. Even assuming under— Did the district court have a hearing? Everything was decided on briefs in this case, Your Honor. That's what I thought. Yes. So your colleague is arguing that some relief other than the return of the 18 items could be provided in this case, and I'm wondering if you could respond to that argument. I don't see how. That wasn't requested in either the original complaint or the First Amendment complaint. It's very clear the only relief that was sought was injunctive relief, commanding the return of the lower receivers, and we're not disputing and asserting a legal right to retain them, and we've endeavored to return all in our possession. So that moots the relief, and the only relief sought in plaintiff's complaint. Typically, a damages claim would have to be preceded by an administrative claim and an exhaustion of administrative remedies. That hasn't happened here. You're saying that because the defendant here is Todd Jones in his official capacity as the director of the ATF, so are you saying that in order to seek damages against this particular defendant, it would have to be through the vehicle of the FTCA? That's correct, Your Honor. That's my understanding. This is a claim. The official capacity claim is against the United States in its sovereign capacity. This is not an individual capacity claim against Mr. Jones, who is no longer, by the way, in charge of ATF, and that's neither here nor there. Hopefully not because of this case. Nothing to do with this case. I think it has more to do with the change of administration. Indeed. Okay. Yes. I'm looking at what is styled as the verified petition for return of property, and it was filed in July of 2015. Is that the amended complaint? It is, Your Honor. Okay. And Count 4, which is stated under the Fifth Amendment, puts forth a procedural due process claim and a takings claim for the taking of private property without just compensation. But then it goes on, and I'm trying to untangle what's actually being requested, and I suppose if I just stop there, it could be construed as seeking damages, but then there would be an FTCA issue of whether that was exhausted. But then the last sentence of Paragraph 41 says, Petitioner invokes the equitable authority of this court to compel the defendant to return the petitioner's property. Was there ever any written request or oral request made from the plaintiff in the district court for anything other than the actual return of the 18 items? No. And I believe Your Honor would read further. I don't have the amended complaint in front of me, but I believe it would contain a prayer for relief at the end of the complaint that states exactly what it is the plaintiff is requesting. And I don't believe Your Honor will see anything about a request for damages in that prayer for relief. It's strictly injunctive relief. I think you're right. It's at Excerpt of Record 64, and the prayer asks for the defendant to release the 18 unreturned items, forthwith and without delay, and attorney fees, cost, and interest, and then other such relief. Yes, Your Honor. That's my understanding as well. Your Honor, the respondent's position here is that this case is moot because the respondent has not taken a position that it has any legal right to retain the lower receivers. The respondent has endeavored, in fact, to return all that it has in its possession. And further, the district court was well within its discretion in declining to exercise its equitable jurisdiction under these circumstances. Would it be appropriate in the Ares I case for Likergan to sue the individual who is responsible for the loss of the 18 items for damages under a Bivens theory? Well, certainly there's nothing I can do to stop them from doing that. I think that would be an unfortunate way to proceed in this case. It wouldn't simply be something that the plaintiff could prevail on, a negligence theory under Bivens, because Bivens requires a constitutional violation, which is an intention or reckless disregard of somebody's Fourth Amendment rights. So a negligence in accounting process or negligence in causing property to be lost is far short of what could ever be sufficient to prevail on a Bivens claim. Is there a vehicle that you could think of that would allow the plaintiff to seek monetary relief for the loss or the alleged loss of the 18 items? Well, we've already discussed our willingness to make good on it. So there's kind of an informal writing of a check. Assuming that the statute of limitations was complied with and all the administrative requirements were satisfied, could there be an FTCA claim seeking damages for the loss of the 18? There could be an FTCA claim. However, we would have to deal with the seized goods exception under the FTCA, and quite frankly, I think that applies pretty squarely in a case such as this. But we could certainly, that's something that would have to be the subject, perhaps, of discovery or litigation on a 12v6 motion. Okay, so other than the government voluntarily writing a $400 check or a $1,000 check or whatever it is, is there some, let's say the government was not willing to do that. Yes. Is there anything that Likert can do to recover the value of those 18 lost items? Well, we've discussed Bivens, but that's a very high standard of proof and intent on the part of the agents to prevail in that. We've discussed FTCA, and I've mentioned, Your Honor, what the obstacles of that may be. And those are, to my knowledge, the only two remedies available. And, yes, there is sovereign immunity that applies here. It's not the case that every wrong has a remedy when you're dealing with the United States in sovereign immunity. But those are the only statutes that I'm aware of that could provide a vehicle for the plaintiff to pursue this $450 here. I have no further questions. I would just simply say, following up on what I said before, I commend you for reaching out to these folks. I hope that you all will talk. I mean, this is just silly. I mean, if you want to argue this as a matter of principle, then pick a good case. This is not a good case to argue the principle, frankly. Get this thing settled. Hopefully, with the $450, you can argue about your other stuff. But if the government is prepared to offer again, I hope you will accept it because you're not going to likely get it any other way. And in the meantime, you'll spend thousands and thousands of dollars of attorney fees. And this is too bad. So we thank you both for your argument, and the case just argued is submitted.
judges: M. Smith, N.R. Smith, Feinerman